# Exhibit C

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1  
Stylesheet Version v1.2  
EPAS ID: PAT4241104

| | |
|---|---|
| **SUBMISSION TYPE:** | NEW ASSIGNMENT |
| **NATURE OF CONVEYANCE:** | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| STEVEN ROSKOWSKI | 04/25/2013 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | BARRACUDA NETWORKS, INC. |
| Street Address: | 3175 WINCHESTER BLVD. |
| City: | CAMPBELL |
| State/Country: | CALIFORNIA |
| Postal Code: | 95008 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
|---|---|
| Patent Number: | 8558888 |
| Patent Number: | 8194174 |

**CORRESPONDENCE DATA**

| | |
|---|---|
| Fax Number: | (650)847-4151 |

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 650.847.4150 |
| Email: | IDocketing@duanemorris.com |
| Correspondent Name: | DUANE MORRIS LLP |
| Address Line 1: | 2475 HANOVER STREET |
| Address Line 4: | PALO ALTO, CALIFORNIA 94304 |

| | |
|---|---|
| **ATTORNEY DOCKET NUMBER:** | R2196-02701 & R2196-02702 |
| **NAME OF SUBMITTER:** | DAVID T. XUE |
| **SIGNATURE:** | /David T. Xue/ |
| **DATE SIGNED:** | 01/24/2017 |

**Total Attachments: 4**  
source=2013.04.25_IndemnityAgreement_StevenRoskowski#page1.tif  
source=2013.04.25_IndemnityAgreement_StevenRoskowski#page2.tif  
source=2013.04.25_IndemnityAgreement_StevenRoskowski#page3.tif  
source=2013.04.25_IndemnityAgreement_StevenRoskowski#page4.tif

# **INDEMNITY AGREEMENT**

This Indemnity Agreement (the "Agreement") is entered into by and between Steven Roskowski ("Executive") and Barracuda Networks, Inc. on behalf of itself and its subsidiaries (the "Company").

This Agreement is effective April 25, 2013.

## FACTUAL RECITALS

This Agreement is entered into with respect to the following facts:

A. Executive was previously employed as Director of Third Iris Corp., and as Director and President of the Third Iris, Inc..

B. Executive resigned voluntarily from his employment with Third Iris Corp and Third Iris, Inc. on June 28, 2012, ("the Resignation Date"); and

C. It is the Company's desire to provide Executive with certain separation benefits that he would not otherwise be entitled to receive related his resignation.

Accordingly, Executive and the Company now agree as set forth below.

## AGREEMENT

1. **Voluntary Resignation From Employment, Positions, and Offices.** Executive hereby confirms his voluntary resignation from his employment and from all positions and offices that he held with Third Iris Corp and Third Iris, Inc. (collectively "Third Iris").

2. **Acknowledgment of Payment/Receipt of All Wages and Benefits.** Executive acknowledges that he has been paid in full all wages (including, but not limited to, base salary, bonuses, and accrued, unused paid time off), severance, outplacement costs, fees, reimbursable expenses, commissions, stock, stock options, other equity grants, vesting, and any and all other benefits and compensation, that Executive earned during his employment with Third Iris. Executive understands and agrees that he is not entitled to, and shall not receive, any further compensation or benefits from Third Iris except as set forth herein.

3. **Indemnity.**

    3.1 **Definitions.** For purposes of this section, the following definitions apply:

    (i) "Expenses" shall include all out-of-pocket costs of any type or nature whatsoever (including, without limitation, any expense, liability, loss, attorneys' fees and related disbursements), actually and reasonably incurred by the Executive in connection with either the investigation, defense or appeal of a Proceeding or establishing or enforcing a right to indemnification under this Agreement, however, "Expenses" shall not include any judgments, fines, excise taxes or penalties, or amounts paid in settlement of a Proceeding.

    (ii) "Proceeding" means any threatened, pending, or completed action, suit or other proceeding, not initiated by or on behalf of Company, and not related to intellectual property, whether civil, criminal, arbitration, or administrative.

1

3.2     Third Party Actions. If the Executive is a party or is threatened to be made a party to, or required to appear as a witness in, any Proceeding which is brought by a former or current employee of Third Iris, vendor, customer, shareholder (other than Company), or by a governmental body or agency, by reason of the fact that the Executive is or was an employee or director of Third Iris, or by reason of anything done or not done by the Executive in any such capacity, the Company, once Company becomes a shareholder in Third Iris, shall indemnify the Executive against all Expenses and liabilities of any type whatsoever (including, but not limited to, judgments, fines, excise taxes and penalties, and amounts paid in settlement) actually and reasonably incurred by the Executive in connection with the investigation, defense, settlement or appeal of such Proceeding, provided the Executive acted in good faith and in a manner the Executive reasonably believed to be in or not opposed to the best interests of Third Iris, and, with respect to any criminal action or Proceeding, had no reasonable cause to believe his or her conduct was unlawful.

3.3     Certain Terminations. The termination of any Proceeding or of any claim, issue, or matter therein by judgment, order, settlement, or conviction, or upon a plea of *nolo contendere* or its equivalent, shall not (except as otherwise expressly provided in this Section) of itself create a presumption that the Executive did not act in good faith and in a manner which the Executive reasonably believed to be in, or not opposed to, the best interests of Third Iris or, with respect to any criminal action or Proceeding, that the Executive had reasonable cause to believe that the Executive's conduct was unlawful.

3.4     Notice by Executive. Promptly after receipt by the Executive of notice of the commencement of or the threat of commencement of any Proceeding, the Executive shall, if the Executive believes that indemnification with respect thereto may be sought from the Company under this Agreement, notify the Company in writing of the commencement or threat of commencement thereof.

3.5     Defense. In the event the Company shall be obligated to pay the Expenses of any Proceeding against the Executive, the Company shall assume the defense of such Proceeding, with counsel selected by the Company. After retention of such counsel by the Company, the Company will not be liable to the Executive under this Agreement for any counsel fees subsequently incurred by the Executive with respect to the same Proceeding, provided that (i) the Executive shall have the right to employ his or her own counsel in any such Proceeding at the Executive's expense; and (ii) the Executive shall have the right to employ his or her own counsel in any such Proceeding at the Company's expense if (A) the Company has authorized in writing the employment of counsel by the Executive at the expense of the Company, (B) the Executive shall have reasonably concluded that there exists a conflict of interest between the Company and the Executive in the conduct of any such defense, or (C) the Company did not, in fact, employ counsel to assume the defense of such Proceeding.

3.6     Exceptions. Any other provision herein to the contrary notwithstanding, the Company shall not be obligated:

(i)     To indemnify or advance Expenses to the Executive with respect to Proceedings or claims initiated by the Executive and not by way of defense, with a reasonable allocation where appropriate, unless (a) such indemnification is expressly required to be made by law, (b) the Proceeding (or part thereof) was authorized by the Board, (c) such indemnification is provided by the Company, in its sole discretion, pursuant to the powers vested in the Company under the General Corporation Law of Delaware or (d) the

PATENT
REEL: 041069 FRAME: 0272

Proceeding is brought to establish or enforce a right to indemnification under this Agreement or any other statute or law or otherwise;

(ii)    To indemnify the Executive under this Agreement for any amounts paid by Executive in settlement of a Proceeding unless the Company consents to such settlement;

(iii)   To indemnify the Executive for Expenses or liabilities of any type whatsoever for which payment is actually made to or on behalf of the Executive under an insurance policy, or under a valid and enforceable indemnity clause, by-law or agreement; or

(iv)    To indemnify or advance Expenses to the Executive for which payment is prohibited by applicable law.

3.7    Indemnification Payment. If Executive is entitled to indemnification of Expenses from the Company in accordance with this Agreement, Executive shall receive payment thereof as soon as practicable after Executive has made a written demand on the Company for indemnification, unless the Company has determined that the Executive is not entitled to indemnification pursuant to the exceptions in Section 3.6 above or otherwise as determined under General Corporation Law of Delaware.

3.8    Partial Indemnification. If Executive is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of Expenses, but not for the total amount thereof, the Company shall nevertheless indemnify Executive for the portion thereof to which Executive is entitled. Attorney's fees and Expenses shall be prorated to the portion of indemnification to which Executive is entitled.

3.9    Stock Tax Liability. Executive hereby agrees to surrender and forfeit the shares of common stock owned by Executive in Third Iris without any compensation from Company, and Company will indemnify Executive for any personal taxes owed by Executive in the United States and/or the Cayman Islands related to the issuance of any Series A stock or the surrender of any of Executive's stock. In the event that Company provides any tax information to other shareholders of Third Iris, Company shall provide the same information to Executive.

4.    Prior Agreements. Executive acknowledges and agrees that he shall continue to be bound by and comply with the terms of any proprietary rights, assignment of inventions, and/or confidentiality agreements between the Company and Executive.

5.    No Licenses. Nothing set forth herein shall constitute either any grant of any right, covenant, release or license to Executive with respect to, or under, any patent, copyright, trade secret or other intellectual property right of Company, or release or relieve Executive of any of his obligations to Company with respect to Company's confidential information or intellectual property.

6.    Governing Law; Venue. This Agreement shall be interpreted in accordance with and governed by the laws of the State of California. The parties consent to exclusive personal jurisdiction in the federal and state courts of Santa Clara, California in the event of a dispute between the parties.

7.    Severability. If any provision of this Agreement is deemed invalid, illegal, or unenforceable, that provision will be modified so as to make it valid, legal, and enforceable, or if it cannot be so modified, it will be stricken from this Agreement, and the validity, legality, and enforceability of the remainder of the Agreement shall not in any way be affected.

PATENT
REEL: 041069 FRAME: 0273

8.  <u>Entire Agreement and Modification</u>.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersede all prior negotiations and agreements between the parties, whether written or oral, which agreements are hereby terminated and of no further legal force or effect.  This Agreement may not be modified or amended except by a document signed by an authorized officer of the Company and Executive.

Dated: April 25, 2013

**STEVEN ROSKOWSKI**

Steven Roskowski

Dated: April 25, 2013

**BARRACUDA NETWORKS, INC.**

By: _____

Its: VP, General Counsel

4